[Cite as *In re M.S.*, 2022-Ohio-1579.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.S.
     V.S.

C.A. No.     30164

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 12 0806
                 DN 20 12 0807

DECISION AND JOURNAL ENTRY

Dated: May 11, 2022

CARR, Presiding Judge.

**{¶1}** Appellant, M.S. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that overruled his objections to a magistrate's decision, terminated his parental rights, and placed his two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Father is the biological father of twins, M.S. and V.S., born December 4, 2020. The children's mother ("Mother') did not participate in any of the trial court proceedings and has not appealed the trial court's judgment.

**{¶3}** On December 8, 2020, CSB filed complaints, alleging that the newborn twins were abused, neglected, and dependent because their parents were homeless, and Mother had serious, untreated mental health and substance abuse problems. Father's paternity of the children was not established at that time, but he was identified as an alleged father on the complaints. Because CSB

believed that Father was homeless, it purportedly served him with the complaint and summons via posting.

**{¶4}** The following day, a shelter care hearing was held before a magistrate. Father did not appear at the hearing, but court-appointed counsel appeared on his behalf. A CSB caseworker testified at the hearing that she had spoken to Father, who had expressed concern about Mother's ongoing drug use and the agency's involvement with the children. The caseworker further testified that Father had referred her to relatives who might be able to care for the twins, but none of them expressed a willingness to provide a placement for the newborn children.

**{¶5}** Father's court-appointed counsel later served CSB with a request for discovery and appeared at a pre-trial hearing on Father's behalf. Following an adjudicatory hearing before a magistrate, the children were adjudicated abused, neglected, and dependent. Father did not appear at the hearing but was represented by his court-appointed counsel. Following the adjudicatory hearing, the trial court permitted Father's court-appointed counsel to withdraw, and directed Father to complete an application with the juvenile court if he wanted court-appointed counsel during future trial court proceedings.

**{¶6}** The trial court later placed the children in the temporary custody of CSB and adopted the case plan as an order of the court. The case plan identified Father as an alleged father and required him to establish his paternity so that he could be added as "the established father to the case plan with objectives for reunification." According to the record, genetic testing was scheduled for both alleged fathers. The other alleged father was ruled out as the father of the twins, but Father failed to appear for testing that was scheduled on February 3, 2021, and again on March 24, 2021.

{¶7} On May 19, 2021, CSB moved for permanent custody of both children. Father does not dispute that he was served with the motion and notice of the hearing at the Summit County Jail, where he was then incarcerated. Father did not contact the trial court to request to appear at the hearing in person or through court-appointed counsel.

{¶8} The case proceeded to a hearing before a magistrate. Father did not appear at the hearing and was not represented by counsel. Following the hearing, the magistrate decided that the children should be placed in the permanent custody of CSB. The trial court adopted the decision the same day, pending the filing of written objections. Shortly afterward, Father sent a letter to the trial court, which the trial court construed as a request for court-appointed counsel.

{¶9} The trial court appointed counsel to represent Father, who filed objections to the magistrate's decision on Father's behalf. Father's objections were that he was not provided notice of these proceedings and was not afforded an adequate opportunity to obtain court-appointed counsel to represent him at the permanent custody hearing. Father had submitted a DNA sample for paternity testing a few days before the permanent custody hearing, and proof of his paternity was filed in this case while Father's objections were pending with the trial court.

{¶10} The trial court later overruled Father's objections, terminated his parental rights, and placed the twins in the permanent custody of CSB. Father appeals and raises four assignments of error. This Court will rearrange and combine some of his assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO [CSB] AS FATHER WAS NOT AFFORDED AN OPPORTUNITY TO BE INVOLVED IN THE CASE OF HIS MINOR CHILDREN DUE TO [CSB'S] FAILURE TO INVESTIGATE, ACKNOWLEDGE, AND PROVIDE NOTICE

OF HEARING AND OTHER ISSUES RELATED TO THE DEPENDENCY ACTION AND PROCEEDINGS IN CONTRADICTION TO DUE PROCESS RIGHTS AFFORDED TO FATHER UNDER THE UNITED STATES AND STATE OF OHIO CONSTITUTIONS.

{¶11} Father's second assignment of error asserts that his due process rights were violated because he never received proper notice of these proceedings. Specifically, he relies on this Court's decision in *In re C.H.*, 9th Dist. Summit No. 29995, 2021-Ohio-3992, in which this Court reversed another permanent custody judgment because the parent had not been properly served with the summons and complaint by posting and mail, as required by Civ.R. 4.4(B). Pointing to service documents in the record, Father asserts that service of the summons and complaint was similarly defective in this case because CSB did not serve him via mail at his last known address.

{¶12} Father preserved this argument by raising this challenge in his objections to the magistrate's decision, but his argument continues to overlook other parts of the record, which demonstrate that Father affirmatively waived any defects in service of the summons and complaint. Specifically, Father appeared through court-appointed counsel at the adjudicatory hearing. In the adjudicatory decisions pertaining to each child, the magistrate explained that all parties were represented by counsel and that "[s]ervice of the complaint and summons was perfected on or defect of service [was] waived by the following parties[,]" which included Father, Mother, and another alleged father.

{¶13} In the trial court, Father did not challenge the magistrate's finding that his counsel waived any defect in service. Moreover, Father has not disputed that explicit waiver on appeal, nor does he argue that his trial counsel lacked authority to, or was ineffective for, waiving any defects in service. Consequently, as Father affirmatively waived any defect in service, his second assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED WHEN IT PROCEEDED TO CONDUCT THE PERMANENT CUSTODY HEARING WHEN FATHER WAS UNREPRESENTED BY COUNSEL.

{¶14} Father's fourth assignment of error is that the trial court erred in proceeding with the permanent custody hearing because he was not represented by counsel. Specifically, he asserts that, because he was incarcerated in the Summit County Jail, he was unable to comply with the trial court's requirements for obtaining court-appointed counsel. Although Father also suggests that the trial court should have arranged for him to be transported to the hearing or to participate via videoconference, he cites no authority to support his argument. Father had failed to attend any of the prior hearings in this case; he did not establish his paternity in a timely manner; he did not maintain contact with the caseworker, guardian ad litem, or the trial court; and there is nothing in the record to suggest that he asked to participate in the permanent custody hearing. Consequently, this Court will confine its review to Father's stated assignment error: that the trial court erred in terminating his parental rights because he was not represented by counsel at the hearing.

{¶15} Although an indigent parent has a statutory right to court-appointed counsel in abuse, neglect, and dependency proceedings, the parent generally must comply with certain procedures to secure counsel. *In re D.C.*, 9th Dist. Summit No. 23484, 2007-Ohio-2344, ¶ 40, citing *In re Careuthers*, 9th Dist. Summit No. 20272, 2001 WL 458681, *4 (May 2, 2001). When the parent is notified about the procedures for obtaining court-appointed counsel but fails to comply with those requirements, the trial court does not err in failing to appoint counsel. *In re Careuthers*, 2001 WL 458681, *4, citing *In re Ramsey Children*, 102 Ohio App.3d 168, 169-170 (5th Dist.1995).

{¶16} Prior to the permanent custody hearing, Father did not contact the juvenile court to request court-appointed counsel. In his objections to the magistrate's decision, Father conceded

that he received notice of the permanent custody hearing at the Summit County Jail 19 days before the scheduled date of the hearing. The notice informed him to contact the juvenile court in person or by calling the court bailiff if he wished to apply for appointed counsel. Father asserted that a phone call from the jail would have been futile because he probably would have had to leave a voicemail and he would have been unable to receive a return call while incarcerated at the jail. He did not claim that he had called the bailiff and was unable to receive assistance, however. Father's speculation that an attempt to call the bailiff would have been futile does not demonstrate a denial of his right to counsel.

{¶17} Moreover, as the trial court explained in overruling Father's objection on this basis, Father demonstrated that he was able to communicate with the trial court from the county jail when he sent a letter to the court after the hearing. Shortly after the magistrate's decision was issued, Father sent a letter to the trial court, stating that Mother had told him the children were not his, but if DNA testing reveals that "they are my kids[,]" he wanted full custody of them. He explained that he would be a good father "if these kids prove to be mine." The letter, which correctly identified the trial court case numbers pertaining to these children, was filed in the children's cases. Although Father did not explicitly request appointed counsel, the trial court liberally construed his letter as a request for court-appointed counsel. The trial court immediately appointed counsel, who filed objections on Father's behalf.

{¶18} Given that Father failed to attempt to comply with the trial court's requirements for obtaining counsel until after the hearing, he has failed to demonstrate that he was denied his right to counsel at the permanent custody hearing. Father's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB], [AND] TERMINATED

FATHER'S PARENTAL RIGHTS * * * WITH A FINDING THAT [CSB] PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419.

## **ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT FATHER ABANDONED HIS CHILDREN.

**{¶19}** Father's first and third assignments of error dispute factual findings and legal conclusions of the magistrate that Father failed to challenge in his objections to the magistrate's decision. Juv.R. 40(D)(3)(b)(iv) provides that, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Father failed to comply with the requirements of Juv.R. 40(D)(3)(b) because he did not preserve these challenges by raising them in his objections in the trial court and he does not argue plain error on appeal. *See In re H.K.*, 9th Dist. Summit No. 29631, 2020-Ohio-5416, ¶ 21; *In re L.B.S.*, 9th Dist. Wayne Nos. 18AP0007 and 18AP0010, 2019-Ohio-3312, ¶ 50.

**{¶20}** Moreover, these assignments of error are based, in large part, on Father's argument that he was not properly served with the summons and complaint in this case. Because this Court found that Father affirmatively waived any service defects in this case, his first and third assignments of error are based on a faulty premise. Father's first and third assignments of error are overruled.

III.

{¶21}  Father's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

DANIEL R. BACHE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

DAVID M. LOWRY, Attorney at Law, for Mother.

JOSEPH KERNAN, Attorney at Law, for Guardian ad Litem.

JAMISON JOHNSON, Guardian ad Litem.